**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOE FIDEL-ALIREZ, JR., SAM S. ARTHUR,
and WYLEY CROSS,

Plaintiffs,

vs. No. CIV 24-0426 JB/JFR

FEDERAL EMERGENCY MANAGEMENT
AGENCY, and DOES 1-20 Inclusive,

Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Judicial Review Hearing, held on June 17, 2026. See Clerk's Minutes at 1, filed June 17, 2026 (Doc. 56). The primary issue is how much compensation Defendant Federal Emergency Management Agency ("FEMA") must provide each individual Plaintiff. The Court concludes that FEMA shall pay: (a) $1,219.88 to Plaintiff Joe Fidel-Alirez, Jr.; (b) $1,118,168.24 to Plaintiff Sam Arthur; and (c) $150,977.62 to Plaintiff Wyley Cross.

**ANALYSIS**

The Plaintiffs request that the Court conduct a judicial review hearing under the Hermit's Peak Act § 104(i). Under the Hermit's Peak Act, at a judicial review hearing, the Court upholds FEMA's claim determinations that substantial evidence supports. See HPA § 104(i)(3) ("The decision of the Administrator incorporating the findings of the Administrator shall be upheld if the decision is supported by substantial evidence on the record considered as a whole."). "To satisfy the substantial evidence standard, an agency need only rely on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Andalex Res., Inc. v. Mine Safety & Health Admin., 792 F.3d 1252, 1257 (10th Cir. 2015)(quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). The standard "requires more than a scintilla, but less than a

preponderance." Lax v. Astrue, 489 F.3d at 1084. Courts conducting substantial evidence review "neither reweigh the evidence nor substitute [their] judgment for that of the agency." Branum v. Barnhart, 385 F.3d 1268, 1270 (10th Cir. 2004). Substantial evidence review "is 'very deferential to the agency,'" and "'a presumption of validity attaches to the agency action and the burden of proof rests with the parties who challenge it.'" BNSF R. Co. v. U.S. Dep't of Lab., 816 F.3d 628, 638 (10th Cir. 2016)(quoting Ron Peterson Firearms, LLC v. Jones, 760 F.3d 1147, 1161-62 (10th Cir. 2014)).

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. Thus, we may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

Plateau Mining Corp. v. Fed. Mine Safety & Health Rev. Comm'n, 519 F.3d 1176, 1194 (10th Cir. 2008)(quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). See McCray v. Soc. Sec. Admin., 435 F. Supp. 3d 1186, 1193 (D.N.M. 2020)(Browning, J.)(describing substantial evidence standard of review). When conducting the HPA's substantial evidence review, the Court must limit its review to documents that FEMA has "before FEMA issues the decision which the Court is reviewing." Gallegos v. Fed. Emergency Mgmt. Agency, No. CIV 24-0170 JB/JFR, 2025 WL 2029724 at * 28 (D.N.M. July 21, 2025)(Browning, J.)("Gallegos").

## I. THE COURT MODIFIES FEMA'S FINAL DECISIONS.

In this section, the Court, pursuant to § 104(i), modifies FEMA's final decision for each Plaintiff. As discussed above, the final decision under § 104(i) review is each Plaintiff's final Letter of Determination, which FEMA issues before the judicial review hearing. The Court addresses each Plaintiff in turn.

**A. THE COURT MODIFIES FEMA'S FINAL DECISION FOR FIDEL-ALIREZ AND ENTERS $1,219.88 IN TOTAL COMPENSATION.**

The Court modifies FEMA's final decision for Fidel-Alirez and enters $1,219.88 in total compensation, which includes $1,000.00 in noneconomic nuisance damages. The parties agree that FEMA's final economic damages offer for Fidel-Alirez is $69.88 and that Fidel-Alirez challenges only FEMA's denial of his $35,000.00 noneconomic nuisance damages request. See Final Letter of Determination for Claim No. 00008313 at 1 (dated March 1, 2024)(Fidel-Alirez-Fidel-Alirez-AR-0116)("Fidel Alirez Final Determination"); Transcript of Judicial Review Hearing at 12:9-17 (taken June 17, 2026)(Court, Berkstresser)("Tr.").[1] Neither the law nor substantial evidence supports giving Fidel-Alirez $0.00 in noneconomic damages. Fidel-Alirez tells FEMA that he works at the New Mexico Behavioral Institute in Las Vegas, New Mexico, and, during his shift, he is informed that he is going to help evacuate residents to ensure their safety from the fire. See Notice of Loss at 4 (dated May 31, 2023)(Fidel-Alirez-Fidel-Alirez-AR-0011)("Fidel-Alirez Notice of Loss). Fidel-Alirez tells FEMA that he was worried and anxious, because his wife, who is on oxygen full time, and four children were home, and he worried they may need to be evacuated but he would not be there to help. See Fidel-Alirez Notice of Loss at 4. Fidel-Alirez tells FEMA that, after he returned to his family two days later, he was able to go through an evacuation strategy with his wife and four kids. See Fidel-Alirez Notice of Loss at 4. Fidel-Alirez tells FEMA that four days later he had to evacuate with his work again, and this time he had to pay for his flight ticket to evacuate from Albuquerque, New Mexico, to Silver City, New Mexico. See Fidel-Alirez Notice of Loss at 4.

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

FEMA maintains its objection that the agency should not award any noneconomic damages, because, according to FEMA, the HPA does not provide, as a matter of law, compensation for noneconomic damages. See Federal Emergency Management Agency's Pre-Hearing Brief at 12, filed June 15, 2026 (Doc. 55)("FEMA Hearing Brief"). FEMA does not point to any record evidence which disputes Fidel-Alirez' noneconomic damages request. Thus, the Court concludes that neither law nor substantial evidence supports the $0.00 noneconomic damages figure in the Fidel-Alirez Final Determination, which is the "final decision" under review here. HPA § 104(i). On the other hand, Fidel-Alirez' request for $35,000.00 for the discomfort, inconvenience, and annoyance that he has suffered is too much. This number is disproportionate to awards for other claimants in similar circumstances. The Court determines that FEMA's contingent award of $1,000.00 is a more appropriate reflection of Fidel-Alirez' noneconomic damages, because the Fidel-Alirez Notice of Loss describes how the Hermit's Peak Fire forces Fidel-Alirez to evacuate in a stressful circumstance, causing not insignificant discomfort, inconvenience, and annoyance.

FEMA proposes a contingent award for noneconomic damages of $1,000.00 to Fidel-Alirez. See FEMA Hearing Brief at 12. FEMA bases this award off a calculation for "annoyance and inconvenience associated with a claimant's evacuation by multiplying the number evacuation days by $17 per day per claimant." FEMA Hearing Brief at 12. FEMA derives this per-diem rate from the "calculation of similar noneconomic damages in Padilla v. Lawrence, 1984-NMCA-064, 101 N.M. 556, 685 P.2d 964."[2] FEMA Hearing Brief at 12-13. Fidel-Alirez evacuates for four

---

[2] The Court finds FEMA's explanation for its noneconomic damages awards formula in the Administrative Record of a case that is not currently before the Court: Arrellin et al., v. FEMA, No. CIV 24-0979 JB/JFR ("Arellin"). In its Brief in the current case, FEMA points the Court to its Pre-Hearing Brief, filed April 14, 2026 (Doc. 105), in Arellin, for explanation how FEMA is calculating noneconomic damages. Brief at 13 ("see also Arrellin, Doc. 105 at 8-10, 18 (explaining FEMA's methodology for calculating contingent noneconomic damage offers)"). Looking to

days with three other family members, which FEMA multiplies by the seventeen dollars per diem rate, yielding a total of $272.00 for annoyance and inconvenience associated with his and his family's evacuation. See FEMA Hearing Brief at 13. "As this total is lower than the $1,000.00 minimum amount for contingent noneconomic damage offers the FEMA has employed in other awards of noneconomic damages, FEMA's contingent award offer is $1,000.00." FEMA Hearing Brief at 13.

The Court highlights that Fidel-Alirez does not seek judicial review of FEMA's offer at the hearing, because the offer is neither "a final decision of the Administrator" by which Fidel-Alirez is "aggrieved," nor is it a "final decision" which Fidel-Alirez asks the Court to "modify or set aside." HPA § 104(i)(1). Instead, Fidel-Alirez asks the Court to modify or set aside FEMA's final decision in the Fidel-Alirez Final Determination. Thus, because FEMA's contingent offer is not under § 104(i)(1) review, FEMA's contingent offer is not subject to substantial evidence review. Nevertheless, FEMA's offer is helpful to the Court's thinking and analysis. The Court concludes that this offer is a "good faith estimate of the annoyance and inconvenience" that Fidel-Alirez faces because of his evacuation. Tr. at 17:9-24 (Court). The Court therefore orders FEMA to pay Fidel-Alirez $1,000.00 in noneconomic damages, which added to the $69.88 of economic

---

FEMA's Pre-Hearing Brief in Arellin, however, the Court does not find a discussion of FEMA's calculation of noneconomic damages in the brief itself, but instead in the portion of the Administrative Record which FEMA cites in Arellin. It is to this portion of the Arellin Administrative Record, therefore, that the Court cites here.

The Court finds it odd how FEMA calculates damages for noneconomic damages. Tort lawyers, courts, mediators, and insurance companies do not find a 1984 Court of Appeals of New Mexico case, see what the damages are there, and then use these 1984 damages to calculate damages in 2026. New Mexico is very different in 2026 than it was in 1984. Juries are much more generous than they were in 1984. Judges in bench trials try to be equally generous. No one in the tort world comes up with a formula like FEMA does to award noneconomic damages. Tort lawyers, insurance companies, courts, and mediators look to the individual and not some formula based on a 1984 Court of Appeals of New Mexico case.

damages, results in an award of $1,069.88 total compensatory damages. This results in a claim preparation expenses award of $150.00.[3] Totaled together, the Court modifies Fidel-Alirez' award to total $1,219.88.

**B. THE COURT MODIFIES FEMA'S FINAL DECISION FOR ARTHUR AND ENTERS $1,118,168.24 IN TOTAL COMPENSATION.**

The Court modifies FEMA's final decision for Arthur and enters $1,118,168.24 in total compensation, which includes $430,000.00 in noneconomic nuisance damages. The Court starts first with the disputed economic damages. The first disputed category is expert fees for rebuilding. See Final Letter of Determination for Claim No. 00006055 (dated December 17, 2024)(Fidel-Alirez-Arthur-AR-0284)("Arthur Final Determination"). Arthur seeks $750.00 in expert fees for rebuilding. See Arthur Final Determination at 2. Although FEMA awards Arthur $0.00 for expert fees for rebuilding, FEMA concedes at the judicial review hearing that Arthur's requested $750.00 in expert fees is compensable. See FEMA Hearing Brief at 15. The Court therefore modifies Arthur's award to include $750.00 in expert fees for rebuilding. See Tr. 19:6-10 (Court, Berkstresser).

The next disputed category is the cost for evacuation meals and expenses. In Arthur's Final Determination, Arthur requests $5,953.22 for evacuation meals and incidental expenses. See Arthur Final Determination at 2. FEMA awards Arthur $0.00 for evacuation meals and incidental expenses. See Arthur Final Determination at 2. This is despite the Hermit's Peak Fire forcing Arthur and his family to evacuate. See Notice of Loss at 5 (dated January 1, 2023)(Fidel-Alirez-

[3] The amount that the Court awards for claim preparation expenses is "the greater of $150 or 5% of the Act's compensatory damages and insurance proceeds recovered by the claimant for Hermit's Peak/Calf Canyon Fire related injuries (not including the lump sum payment or monies reimbursed under the Act for the purchase of flood insurance) but [does] not exceed $25,000." 44 C.F.R. 296.31(b). FEMA provides a minimum claim preparation expense of $150.00. See Tr. at 18:12-16 (Sydow)(citing 44 C.F.R. 296.3(1)(b)).

Arthur-AR-0231)("Arthur Notice of Loss). Neither law nor substantial evidence supports the $0.00 evacuation meals and expenses figure in the Arthur Final Determination, which is the "final decision" under review here. HPA § 104(i). First, FEMA is unable to articulate why it offers Arthur $0.00 for evacuation expenses considering that he and his family evacuated. See Tr. at 30:1-4 (Go). Second, FEMA now argues at the judicial review hearing that Arthur should receive some amount of evacuation meals and incidental expenses but states that the award should be $2,014.15 based on the standard rate calculator. See FEMA Hearing Brief at 14. The Court highlights that Arthur does not seek judicial review of FEMA's offer at the hearing, because the offer is neither "a final decision of the Administrator" by which Arthur is "aggrieved," nor is it a "final decision" which Arthur asks the Court to "modify or set aside." HPA § 104(i)(1). Instead, Arthur asks the Court to modify or set aside FEMA's final decision in the Arthur Final Determination. Thus, because FEMA's new evacuation meals and expenses offer is not under § 104(i)(1) review, FEMA's offer is not subject to substantial evidence review.

Even if that offer is subject to substantial evidence review, neither the law nor substantial evidence supports awarding Arthur $2,014.15 for evacuation meals and expenses. FEMA tells the Court that it uses the standard rate calculator in instances where plaintiffs do not provide receipts. See Tr. at 34:1-9 (Go). Here, Arthur provides FEMA with receipts that support an award of $5,953.22 for evacuation meals and expenses. See Evacuation Receipts (Fidel-Alirez-Arthur-AR-0069). The Court therefore modifies Arthur's award to include $5,953.22 for evacuation meals and expenses. See Tr. 34:12-14 (Court).

The third disputed category is expert fees associated with the production of an arborist expert report. In Arthur's Final Determination, he requests $4,350.00 for the arborist expert report. See Arthur Final Determination at 1. FEMA awards Arthur $3,800.00 for the arborist expert report. See Arthur Final Determination at 1. Neither law nor substantial evidence supports the

$3,800.00 figure for the arborist expert report in the Arthur Final Determination. See HPA § 104(i). FEMA argues that the Court should not award the $550.00 difference, because the invoice lists this difference as boundary work rather than part of the report fee. See Tr. at 12-24 (Go). The Court concludes that substantial evidence does not support FEMA's award of $3,800.00, because the invoice lists boundary work separate from the damage amount. See Tr. at 37:2-6 (Court). The $550.00 represents an amount in the invoice for the arborist expert report and not for the expert's conclusion regarding damages or the work actually performed. The Court therefore modifies Arthur's award to include $4,350.00 for fees associated with the production of an arborist expert report. See Tr. 34:12-14 (Court).

The fourth disputed category is expert fees associated with the production of an erosion expert report. In Arthur's Final Determination, he requests $4,588.53 for the erosion expert report. See Arthur Final Determination at 1. FEMA argues that the Court should award Arthur $4,512.45, because the administrative fee in the invoice totaling $76.08 is not compensable. See FEMA Hearing Brief at 15. FEMA argues that this administrative fee is not compensable, because the fee is not "necessary." Tr. at 38:12-14 (Go). As the Court explains at the judicial review hearing, this fee is compensable, because it is part of the fee that the erosion expert charges Arthur. See Tr. at 39:23-25 (Court). There is not substantial evidence for FEMA arbitrarily selecting lines in an expert's invoice, and stating that amount is not necessary and thus not compensable. The Court therefore modifies Arthur's award to include $4,588.53 for fees associated with the production of an erosion expert report. See Tr. 39:1-3 (Court). This brings the sum for economic damages to $663,168.24.

The Court finally turns to noneconomic damages. Arthur challenges FEMA's denial of his $430,000.00 noneconomic nuisance and emotional damages request. See Arthur Final Determination at 1. FEMA awards Arthur $0.00 for noneconomic damages. See Arthur Final

Determination at 1. Neither the law nor substantial evidence supports giving Arthur $0.00 in noneconomic damages. Arthur tells FEMA that he purchases the home in 1992 and spends many decades developing the property into what becomes their cherished five-bedroom home. See Arthur Notice of Loss at 5. Arthur tells FEMA that, on April 22, 2022, he and his family evacuate their home, "which later turned out to be the same day their home burned down." Arthur Notice of Loss at 5. Arthur tells FEMA that he and his family "hurriedly sorted through decades of accumulated possessions and packed some family mementos along with some clothing." Arthur Notice of Loss at 5. Arthur tells FEMA that, while he is evacuating, he thought they were going to run out of gas, because the detour route that he is told to take is so far from the usual route. See Arthur Notice of Loss at 5. Arthur tells FEMA that, because of the evacuation, they camped in a trailer for three weeks. See Arthur Notice of Loss at 5. Arthur tells FEMA that he and his family are devastated upon their return to find they had lost everything; not only did they lose their home, "but also the well house, tool shed, garage/workshop, as well as the seven-acre forest with mature and irreplaceable ponderosa pine, oak, and spruce trees." Arthur Notice of Loss at 5.

FEMA maintains that FEMA should not award any noneconomic damages, because, according to FEMA, the HPA does not provide compensation for noneconomic damages as a matter of law. See Arthur Final Determination at 1. As discussed above, a legal argument is not substantial evidence. Thus, the Court concludes the neither law nor substantial evidence supports the $0.00 in noneconomic damages figure in the Arthur Final Determination.

FEMA first offers Arthur a contingent award of $5,443.40 for "annoyance and inconvenience damages for evacuation and loss of use of his real property." FEMA Hearing Brief at 17. As discussed above, FEMA's contingent award offer is not under § 104(i) substantial evidence review. FEMA's offer is, however, helpful to the Court's thinking and analysis. The Court nevertheless concludes that FEMA's $5,443.40 offer is not reasonable, because it does not

reflect accurately Arthur's discomfort, inconvenience, and annoyance. This claim for noneconomic damages represents the annoyance and discomfort of having the evacuate and losing a home to the Hermit's Peak Fire. Accordingly, the Court modifies FEMA's final decision and enters $430,000.00 in noneconomic damages, because Arthur's request is reasonable, and the evidence in the record supports annoyance and inconvenience in that amount. Added to the economic damages -- $663,168.24. -- results in a total compensatory award of $1,093,168.24. This subtotal results in a claim preparation expenses award of $25,000.00. Totaled together, the Court modifies Arthur's award to $1,118,168.24.

### C. THE COURT MODIFIES FEMA'S FINAL DECISION FOR CROSS AND ENTERS $150,977.62 IN TOTAL COMPENSATION.

The Court modifies FEMA's final decision for Cross and enters $150,977.62 in total compensation, which includes $100,000.00 in noneconomic nuisance damages. The parties agree that FEMA's final economic damages for Cross is $43,788.21 and that Cross challenges only FEMA's denial of his $100,000.00 noneconomic nuisance damages request. See Final Letter of Determination for Claim No. 00006096 at 1 (dated March 30, 2024)(Fidel-Alirez-Cross-AR-0047)("Cross Letter of Determination"). In FEMA's Cross Letter of Determination, FEMA awards $0.00 for noneconomic damages. See Cross Letter of Determination at 1. Neither the law nor substantial evidence supports giving Cross $0.00 in noneconomic damages. Cross files on behalf of himself, his wife, and his two children. See Notice of Loss at 3 (dated January 25, 2023)(Fidel-Alirez-Cross-AR-0283)("Cross Notice of Loss"). Cross tells FEMA that a local sheriff shows up on Cross' property, and tells Cross and his family that they need to evacuate immediately. See Cross Notice of Loss at 5. Cross tells FEMA that he and his family have about fifteen minutes to grab what they can and leave their property. See Cross Notice of Loss at 5. Cross tells FEMA that they can see the flames coming from the mountain and are afraid they will

not be able to safely evacuate. See Cross Notice of Loss at 5. Cross tells FEMA that they originally go to stay with his wife's dad, but they were also forced to evacuate from that house. See Cross Notice of Loss at 5. Cross tells FEMA that the heavy smoke causes Cross and his family to leave the area entirely. See Cross Notice of Loss at 5. Cross tells FEMA that, after returning home for two weeks, he and his family had to evacuate again because of flash flood warnings that are more severe because the fire erodes the roads. See Cross Notice of Loss at 5.

FEMA maintains that the agency should not award any noneconomic damages, because, according to FEMA, the HPA does not provide compensation for noneconomic damages as a matter of law. See Cross Letter of Determination at 1. As discussed, a legal argument is not substantial evidence. Thus, the Court concludes that neither law nor substantial evidence supports the $0.00 noneconomic damages figure in the Cross Letter of Determination, which is the "final decision" under review here. HPA § 104(i)(1).

FEMA offers Cross a contingent award of $3,133.14 "for annoyance and inconvenience" damages related to Cross' evacuation. FEMA Hearing Brief at 18. As discussed above, FEMA's contingent award offers are not under § 104(i) substantial evidence review. FEMA's offer is, however, helpful to the Court's thinking and analysis. The Court nevertheless concludes that FEMA's $3,133.14 offer does not accurately reflect Cross and his family's discomfort, inconvenience, and annoyance. Beyond having to evacuate with his family several times, Cross must deal with the flooding damage after he returns to his home. The Court accordingly modifies FEMA's final decision and enters $100,000.00 in noneconomic damages, because this amount is more in line with the discomfort and annoyance which Cross faces, and more in line with the damages awards given to claimants in similar positions. Added to FEMA's award of $43,788.21 of economic damages results in a total compensatory award of $143,788.21. This results in a claim

preparation expenses award of $7,189.41. Totaled together, the Court modifies the award for Cross to a total award of $150,977.62.

**IT IS ORDERED** that: (i) the Court limits its judicial review to materials presented to FEMA before FEMA rendered a judicially reviewable decision, because the Hermit's Peak Act provides that a claimant may seek judicial review of FEMA's "final decision," and a district court "shall" review that final decision "on the record made before the Administrator," HPA § 104(i)(1)-(2); (ii) the Court limits its judicial review to materials presented to FEMA before FEMA issued the decisions which the Court is reviewing -- which, in the Plaintiffs' cases, are the Letters of Determination -- because the Hermit's Peak Act provides that a district court "shall" review that final decision "on the record made before the Administrator," HPA § 104(i)(1)-(2); (iii) FEMA shall pay: (a) $1,219.88 to Plaintiff Joe Fidel-Alirez, Jr.; (b) $1,118,168.24 to Plaintiff Sam Arthur; and (c) $150,977.62 to Plaintiff Wyley Cross.

UNITED STATES DISTRICT JUDGE

*Counsel:*

Brian Colon
Jesse Gallegos
Jacob Payne
Alexander Flores
Robert Sanchez
Singleton Schrieber
Albuquerque, New Mexico

--and--

Gerald Singleton
Benjamin Siminou
Jonna Lothyan
Krystle Berkstresser
Singleton Schrieber
San Diego, California

*Attorneys for the Plaintiffs*

Todd Blanche
United States Attorney General
Ryan Ellison
First Assistant United States Attorney
Nicholas Sydow
Carrie Yang
Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Defendant*